UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
GERALDINE KEITH,                              )
                                              )
    Plaintiff,                              )
                                              )   Civil Action No. 02-1054 (RBW)
    v.                                     )
                                              )
THE UNITED STATES RAILROAD                    )
RETIREMENT BOARD, et al.                      )
                                              )
    Defendants.                             )
_____)

### MEMORANDUM OPINION

Currently before this Court is the United States Railroad Retirement Board's ("Board") Motion to Dismiss ("Defs.' Mot.") [D.E. # 54] pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1] The Board requests that the plaintiff's mental incapacity, hostile work environment, and discrimination claims be dismissed on the ground that this Court lacks subject matter jurisdiction over these claims. Id. at 1. The Board also requests that the Court dismiss the plaintiff's intentional infliction of emotional distress claims for failure to state a claim upon which relief can be granted. Id. For the reasons stated below, the Court will grant the Board's dismissal motion.

### I. FACTUAL BACKGROUND

This Court has previously set forth an extensive discussion of the facts of this case. See Keith v. U.S. R.R. Ret. Bd., 284 F. Supp. 2d 31, 32-34 (D.D.C. 2003). Accordingly, there is no need to provide an extensive discussion of the facts again. However, in addressing the motion

---

[1] The following papers have been submitted in connection with this motion: (1) Memorandum of Points and Authorities in Support of Motion to Dismiss ("Defs.' Mem."); (2) the Plaintiff's Opposition to Defendants' Motion to Dismiss ("Pl.'s Opp'n"); and (3) the Reply to Opposition to Defendants' Motion to Dismiss ("Defs.' Reply").

now before the Court, it is helpful to review some of the events that gave rise to this dispute.

Following a verbal altercation with her supervisor, the plaintiff entered into settlement discussions with her employer, the Board. Defs.' Mot. at 3. On April 17, 1996, the plaintiff executed an informal agreement with the Board that required her supervisor to write a formal letter of apology to the plaintiff. Defs.' Mot. at 4. The agreement further stipulated that if the plaintiff was dissatisfied with the informal resolution of the issues she had raised, she could file a complaint with the Board's Office of Equal Opportunity ("OEO"). Id. The plaintiff signed and dated the informal agreement, and added her own postscript indicating that "FOR THE RECORD ---- I have signed your Certification and Acceptance of the Informal Resolution." Defs.' Mot., Ex. 3 (Notice of Final Interview and Informal Resolution, dated April 4, 1996).[2] The plaintiff, however, was not satisfied with her supervisor's apology and "appealed to the Board's OEO office to reinstate her informal complaint[,] contending that the Agency breached the agreement." Id. (citing Ex. 4 (Notice of Breach of Informal Resolution, dated May 17, 1996)).

Following a second apology letter from the plaintiff's supervisor, the Board's OEO found that the Board had not breached the settlement agreement. Id., Ex. 6 (Board's Letter to Geraldine Keith, dated May 29, 1996). The plaintiff appealed the Board's decision to the Equal Employment Opportunity Commission ("EEOC"), seeking specific enforcement of the settlement agreement. Id., Ex. 8 (EEOC Decision, dated October 10, 1997). The EEOC affirmed the OEO's decision, id., and on January 9, 1998, the plaintiff sought reconsideration from the EEOC,

---

[2]The Court notes that when citing Board exhibits that were submitted with its dismissal motion, the Court is referencing the Board's initial dismissal motion filed on December 17, 2002, not the Board's second dismissal motion filed on February 17, 2006.

id., Ex. 9.  For the first time, the plaintiff stated that she "want[ed] to bring to [the EEOC's] attention [] that [she] was mentally and emotionally ill when [she] signed the Informal Resolution on April 17, 1996."  Id.  On October 19, 2000, the EEOC denied the plaintiff's request for reconsideration.  Id., Ex. 12 (Denial of Request for Reconsideration, dated October 19, 2000).

On May 30, 2002, the plaintiff filed her first lawsuit with this Court (Civil Action No. 02-1054), again asserting that she lacked the requisite mental capacity to enter into the settlement agreement.  Complaint ("Compl.") ¶ 13.  On September 29, 2003, this Court issued a Memorandum Opinion and Order denying the Board's Motion to Dismiss because the Court was uncertain whether the plaintiff had exhausted her administrative remedies with respect to her mental incapacity claim.  Keith, 284 F. Supp. 2d at 39-40.  On December 15, 2003, the Court remanded the plaintiff's case to the EEOC for a determination on whether the plaintiff had exhausted her administrative remedies with respect to her mental incapacity claim.  December 15, 2003 Order.  Then, on February 23, 2005, the EEOC determined that the plaintiff had exhausted her remedies with respect to this claim.  Pl.'s Opp'n, Ex. 1 (EEOC Decision on a Petition for Enforcement, dated February 23, 2005).

On May 5, 2005, the plaintiff filed a motion to reinstate her earlier filed case and to amend her Complaint, citing as support for the motion, the EEOC's determination that she had exhausted her administrative remedies regarding her mental incapacity claim, and on May 16, 2005, she initiated a second lawsuit in this Court (Civil Action No. 05-0966).  Motion to Reinstate Case and Motion to Amend Complaint at 1.  Then, on June 2, 2005, this Court granted the plaintiff's motion to reinstate her first lawsuit.  Thereafter, on September 1, 2005, the

plaintiff again moved to amend her Complaint and also petitioned to consolidate her newly filed case with her original case of 2002. Plaintiff's Motion to Consolidate her Civil Action and Amend Complaint at 1-4. The Court granted the plaintiff's motions on September 9, 2005. The plaintiff alleged, for the first time in her Amended Complaint, claims of hostile work environment, discrimination, and intentional infliction of emotional distress arising from her employment at the Board. Amended Complaint ("Am. Compl.") ¶¶ 28-56.[3]

On February 17, 2006, the Board filed its second dismissal motion, asserting that (1) this Court lacks subject matter jurisdiction to entertain the plaintiff's mental incapacity, hostile work environment and discrimination claims; and (2) the plaintiff fails to state a claim for which relief can be granted with respect to her intentional infliction of emotional distress claim. Defs.' Mot. at 1. In her Opposition to Defendant's Motion to Dismiss, the plaintiff contends that this Court does have subject matter jurisdiction to entertain her claims, and that the Board's contentions with respect to her intentional infliction of emotional distress claim is misplaced. Plaintiff's Opposition to Defendant's Motion to Dismiss ("Pl.'s Opp'n") at 1. The Board reiterates its positions in its Reply to Opposition to Defendant's Motion to Dismiss. ("Defs.' Reply").

## II. STANDARD OF REVIEW

1.     **Rule 12(b)(1)**

On a Federal Rule of Civil Procedure 12(b)(1) motion to dismiss, the plaintiff bears the burden of establishing by a preponderance of the evidence that the court has jurisdiction to

---

[3] Although the plaintiff did not specifically allege mental incapacity in her Amended Complaint, she did indicate that she petitioned the Court to reinstate the Complaint in her earlier case based on the EEOC's determination that she had exhausted her remedies with respect to her mental incapacity claim. Am. Compl. ¶¶ 25-26. Considering that the plaintiff specifically alleged mental incapacity her in her 2002 Complaint, Compl. ¶ 13, the Court concludes that its has been pled in her Amended Complaint, especially since a determination of its sustainability is necessary to the resolution of her hostile work environment and discrimination claims.

entertain her claims. Grand Lodge of Fraternal Order of Police v. Aschcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001) (holding that the court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority"); Pitney Bowes, Inc. v. U.S. Postal Serv., 27 F. Supp. 2d 15, 19 (D.D.C. 1998).  While the Court must accept as true all the factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993), because the plaintiff has the burden of proof to establish jurisdiction, the "plaintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." Grand Lodge of Fraternal Order of Police, 185 F. Supp. 2d at 13-14 (citation and internal quotation marks omitted).  This scrutiny permits the Court to consider material outside of the pleadings in its effort to determine whether the Court has jurisdiction.  See EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624-25 n.3 (D.C. Cir. 1997); Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir. 1992); Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987); Grand Lodge of Fraternal Order, 185 F. Supp. 2d at 14.

    2.    **Rule 12(b)(6)**

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court must construe the allegations and facts in the complaint in the light most favorable to the plaintiff and must grant the plaintiff the benefit of all inferences that can be derived from the alleged facts. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994). However, the Court need not accept inferences or conclusory allegations that are unsupported by

the facts set forth in the complaint.  Id. at 1276.  In deciding whether to dismiss a claim under Rule 12(b)(6), the Court can only consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice.  St. Francis Xavier Parochial Sch., 117 F.3d at 624-25 (D.C. Cir. 1997).  The Court will dismiss a claim pursuant to Rule 12(b)(6) only if the defendant can demonstrate "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle [her] to relief."  Conley, 355 U.S. at 45-46.

### III. ANALYSIS

The plaintiff's complaints allege two categories of claims: (1) that she was the victim of racial discrimination in 1996, which created a hostile work environment; and (2) that she lacked the mental capacity to enter into the 1996 settlement agreement to resolve the 1996 racial discrimination and hostile work environment claims.[4]  Before the Court addresses why these

---

[4] The plaintiff also asserts claims of intentional infliction of emotional distress.  Am. Compl. ¶¶ 51-56.  These claims, however, cannot survive.  It is well settled that while 42 U.S.C. § 2000e-16 is the exclusive remedy for federal employment discrimination claims, Brown v. Gen. Servs. Admin., 425 U.S. 820, 834 (1976), common law intentional infliction of emotional distress claims are not necessarily subsumed by Title VII.  See Stewart v. Thomas, 538 F. Supp. 891, 896 (D.D.C. 1982).  But when a plaintiff alleges "that his or her emotional distress consists entirely of the defendant's acts of discrimination in the Title VII context, courts within this jurisdiction have consistently held 'that dismissal of the intentional tort claim is warranted because the conduct and the injury complained of are subsumed by Title VII.'"  Tiefenbacher v. AARP, No. 05-1802, 2006 U.S. Dist. LEXIS 23629, at *12-13 (D.D.C. April 27, 2006) (quoting Jackson v. Am. Chem. Soc'y, 812 F. Supp. 239, 243 (D.D.C. 1993)).  Furthermore, courts have held that when hostile work environment claims stem from alleged employment discrimination, intentional infliction of emotional distress claims originating from a hostile work environment are equally subsumed by Title VII.  See McCray v. Veneman, 298 F. Supp. 2d 13, 15 (D.D.C. 2002).  In this case, even after viewing the plaintiff's Amended Complaint in a light most favorable to her, and resolving all factual doubts and inferences in her favor, it is evident that the plaintiff cannot demonstrate that her alleged intentional infliction of emotional distress arose from anything beyond the alleged discriminatory acts committed by the Board.  In Count Five of her Amended Complaint, entitled "Intentional Infliction of Emotional Distress," the plaintiff first "incorporates by reference paragraphs 1-33 as though stated herein."  Am. Compl. ¶ 51.  And the pertinent representations in those paragraphs alleged only discriminatory acts perpetuated against the plaintiff by the defendant.  Am. Compl. ¶¶ 11-27.  Furthermore, in Count Five itself, the plaintiff asserts that she "was the object of [her supervisor's] discriminatory behavior."  Am. Compl. ¶ 53.  Accordingly, the plaintiff's intentional infliction of emotional distress claims must be dismissed, as they arise solely from the alleged discriminatory acts of the

(continued...)

claims cannot survive the Board's dismissal motion, it is helpful to ascertain exactly what is proper for this Court to resolve at this time. As more fully discussed below, the only claim which is ripe for adjudication at this time is the allegation that the plaintiff lacked the mental incapacity to enter into the 1996 settlement agreement.

The plaintiff's discrimination claims are predicated solely upon the allegations that were the basis for the 1996 settlement agreement. The April 4, 1996 settlement agreement between the plaintiff and the Board, which the plaintiff signed on April 17, 1996, stipulated that:

> If you are not satisfied with this informal resolution to issues you raised, you are now entitled to file [with the OEO,] a discrimination complaint based on race color, religion, sex, national origin physical or mental disability, age and/or reprisal. . . . If you file a complaint, it must be in writing, signed, and filed, in person or by mail within 15 days after receipt of this notice.

Defs.' Mot. Ex. 3 at 2 (emphasis added). Assuming the validity of the settlement agreement, its language thus precludes the plaintiff from raising any of her Title VII claims before this Court because she failed to file an administrative complaint within 15 days of signing the settlement agreement. Defs.' Mot. at 5. It is only if the settlement agreement is deemed invalid (based on the plaintiff's mental incapacitation claim) that this preclusive language may be disregarded. The Court, therefore, cannot even address whether the plaintiff exhausted her administrative remedies,[5] and thus cannot entertain her Title VII claims until the fate of the plaintiff's mental

---

[4](...continued)
defendant and are therefore subsumed by Title VII. See Tiefenbacher, 2006 U.S. Dist. LEXIS 23629, at *12-13.

[5] Even if the Court could address the plaintiff's hostile work environment and discrimination claims in their current posture, they would have to be dismissed due to the plaintiff's failure to exhaust her administrative remedies. Defs.' Mot. at 1. This is because a plaintiff is required to exhaust her administrative remedies regarding her Title VII claims by filing an administrative complaint with the EEOC before bringing her claims to this Court. See Park v. Howard Univ., 71 F.3d 904, 907 (D.C. Cir. 1995); 42 U.S.C. § 2000e-16(c) (permitting federal employees aggrieved

(continued...)

incapacity claim is determined. The Court will address that question at this time.

The Board argues that this Court lacks the requisite jurisdiction to entertain the plaintiff's claim that she was mentally incapable of entering into the April 4, 1996 settlement agreement. Defs.' Mot. at 4-5. Specifically, the Board asserts that because this case involves a contract dispute with the government, jurisdiction is exclusively conferred upon the United States Court of Federal Claims in accordance with the Tucker Act, 28 U.S.C. § 1491 (2000).[6] Id. at 5; Defs.' Reply at 3. On the other hand, the plaintiff argues that the Tucker Act only confers exclusive jurisdiction upon the Court of Federal Claims if a contract dispute involving the United States concerns an alleged breach of contract. Pl.'s Opp'n at 5. The plaintiff contends that her contract claim does not concern a breach of contract, but rather raises the question of whether she had the capacity to even enter unto it at all. Id. The plaintiff therefore asserts that the Court does have jurisdiction under 28 U.S.C. § 1331 (2000),[7] 28 U.S.C. § 1343 (2000),[8] and 42 U.S.C. § 2000e-

---

[5](...continued)
by Title VII violations to bring a civil action only after an administrative charge has been filed and either the EEOC has dismissed the charge or has taken no action for at least 180 days following filing of the charge). The April 4, 1996 settlement agreement between the plaintiff and the Board stipulates that if the plaintiff was dissatisfied with the settlement agreement, she was required to file a discrimination complaint within 15 days after receiving notice of the settlement agreement. Defs.' Mot. Ex. 3 at 2. Its language thus precludes the plaintiff from raising any of her Title VII claims before this Court because she failed to file an administrative complaint within 15 days of signing the settlement agreement. Defs.' Mot. at 5. Consequently, the plaintiff's hostile work environment and discrimination claims would have to be dismissed even if the Court could reach the exhaustion question.

[6] 28 U.S.C. § 1491(a)(1) states that "[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."

[7] 28 U.S.C. § 1331 states that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

[8] 28 U.S.C. § 1343(a)(4) states that "[t]he district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: To recover damages or to secure or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote."

16 (2000),[9] to review her mental incapacity claim.  Am. Compl. ¶ 2.

It is well settled in this jurisdiction that a settlement agreement, in which the United States is a party, is considered a government contract.  See Shaffer v. Veneman, 325 F.3d 370, 372 (D.C. Cir. 2003) (citations omitted).  It is also well-established that 28 U.S.C. § 1331 does not provide a sufficient basis to invoke this Court's jurisdiction over government contract disputes.  Spectrum v. Leasing Corp. v. United States, 764 F.2d 891, 892, 895 (D.C. Cir. 1985); see also Am. Airlines, Inc. v. Austin, 778 F. Supp. 72, 74 (D.D.C. 1991).  Rather, to establish this Court's jurisdiction over a government contract dispute, the plaintiff must demonstrate "that the court has subject matter jurisdiction over the issues raised by the suit, that the United States has waived its immunity for suits of that kind, and that the United States has consented to be sued in that particular court."  Am. Airlines, Inc. v. Austin, 778 F. Supp. at 74.

The Board contends that this Court lacks jurisdiction to hear the plaintiff's mental incapacity claim because under the Tucker Act, 28 U.S.C. § 1491, Congress has exclusively authorized the Court of Federal Claims to hear such claims involving government contracts.  Defs.' Mot. at 5; Defs.' Reply at 3.  However, exclusive jurisdiction is only conferred upon the Court of Federal Claims if the contract claim against the United States involves monetary damages in excess of $10,000.  Rochon v. Gonzales, 438 F.3d 1211, 1214 (D.C. Cir. 2006) (citing 28 U.S.C. § 1346(a)(2) (2000)).

The Court of Federal Claims has also held that for it to have jurisdiction pursuant to the

---

[9] 42 U.S.C. § 2000e-16(c), which concerns nondiscrimination in federal employment, states that "[w]ithin 90 days of receipt of notice of final action taken by a department, agency , or unit . . . [a federal employee] may file a civil action provided in section 706 [42 U.S.C. § 2000e-5], in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant."

Tucker Act, a case concerning a government contract dispute must involve money damages. Griswold v. United States, 61 Fed. Cl. 458, 465 (2004) ("a plaintiff's 'claim . . . must be for money.'") (quoting New York Life Ins. Co. v. United States, 118 F.3d 1553, 1556 (Fed. Cir. 1997); Scarseth v. United States, 52 Fed. Cl. 458, 466 (2002) ("[T]he Tucker Act requires that the plaintiff identify an independent substantive right enforceable against the United States for money damages.") (emphasis added). Furthermore, under the Tucker Act, in determining if jurisdiction is proper in either the Court of Federal Claims or a District Court, it is not enough that monetary damages would directly arise from a successful claim for equitable relief. See Vietnam Veterans of Am. v. Sec'y of the Navy, 843 F.2d 528, 534 (D.C. Cir. 1988) ("It is . . . clear that a claim is not for money merely because its success may lead to pecuniary costs for the government or benefits for the plaintiff").

In this case, the plaintiff has not sought money damages, but rather a "declaratory judgment that the settlement agreement executed by the parties on April 17, 1996 is void . . . because [she] lacked the requisite mental capacity to enter a contract at the time she signed it." Compl. at 7, ¶ 1, 4. Therefore, the Court finds that because the plaintiff has not requested money damages for her mental incapacity claim, the United States Court of Federal Claims does not have subject matter jurisdiction to entertain her claim. The Court further finds that even if monetary damages in excess of $10,000 would directly flow from a successful rescission of the contract,[10] the Court of Federal Claims, as noted above, would still lack jurisdiction to entertain the plaintiff's mental incapacity claim. See Vietnam Veterans of Am., 843 F.2d at 534.

---

[10] This obviously assumes that the plaintiff could initially prevail on her mental incapacity claim and then on her justiciable discrimination claims.

Accordingly, the Board cannot prevail on its position that dismissal is required because the plaintiff's mental incapacity claim falls under the jurisdictional reach of the Court of Federal Claims.

However, this does not end the Court's analysis of whether it has subject matter jurisdiction to entertain the plaintiff's mental incapacity claim. The plaintiff offers three jurisdictional provisions that purportedly serve as bases for invoking this Court's jurisdiction. Am. Compl. ¶ 2. The Court, however, finds that none of these provisions support the plaintiff's position. First, the Court cannot exercise jurisdiction under 28 U.S.C. § 1343 because the plaintiff has not indicated how her mental incapacity claim concerns an "Act of Congress providing for the protection of civil rights." 28 U.S.C. § 1343(a)(4). Second, jurisdiction cannot be exercised under 42 U.S.C. § 2000e-16 because the plaintiff has not indicated how her mental incapacity claim concerns employment discrimination by the Board. Finally, 28 U.S.C. § 1331 addresses only the types of claims over which this Court may exercise jurisdiction, not whether the United States has waived its immunity as to the claims being pursued by a plaintiff, or in what forum the United States has consented to being sued. See Am. Airlines, Inc., 778 F. Supp. at 74. Thus, the plaintiff may not exclusively rely on 28 U.S.C. § 1331 as a basis for invoking this Court's jurisdiction. See id.

Thus, the Court finds that none of the grounds advanced by the plaintiff provide a proper basis for invoking this Court's jurisdiction over her mental incapacity claim. Moreover, the Court finds that the defendant's jurisdictional contentions do not serve as a proper basis for invoking the Court of Federal Claim's jurisdiction over the claim. Consequently, because neither party has demonstrated that this Court unequivocally does or does not have jurisdiction to

entertain the plaintiff's mental incapacity claim, the Court remains uncertain as to whether it is a proper forum for the litigation of that claim. But because the burden lies with the plaintiff to demonstrate that this Court has jurisdiction, see Grand Lodge of Fraternal Order of Police, 185 F. Supp. 2d at 13, her mental incapacity claim must be dismissed in light of the failure to satisfy that burden.[11] However, should the plaintiff wish to reassert a proper basis for invoking this Court's jurisdiction to entertain her mental incapacity claim, the Court is willing to entertain such an assertion upon a timely filed motion for reconsideration.

### IV. CONCLUSION

Based on the foregoing analysis, the Court concludes that the plaintiff has failed to meet her burden of establishing this Court's jurisdiction with respect to her mental incapacity claim. Accordingly, this claim will be dismissed. The Court also concludes that the plaintiff's hostile work environment and discrimination claims are not ripe for judicial review because their justiciability is dependent on the plaintiff's ability to prevail on her mental incapacity claim. Accordingly, these claims must be dismissed without prejudice. Finally, the Court concludes that the plaintiff's intentional infliction of emotional distress claims are subsumed by her Title VII claims. Accordingly, these claims must also be dismissed.

**SO ORDERED** on this 25th day of July, 2006.[12]

                                              REGGIE B. WALTON
                                              United States District Judge

---

[11] See e.g. Roberts v. Salerian, 320 F. Supp. 2d 24, 25 (D.D.C. 2004) (holding that the court lacked subject matter jurisdiction where the plaintiff failed to proffer any evidence that the parties were diverse for the purposes of diversity jurisdiction).

[12] An Order consistent with this Memorandum Opinion is being issued contemporaneously herewith.